# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA,              )
                                       )
    Plaintiff                          )
                                       )     Federal Case No.
    v.                                 )
                                       )     **1:23-CR-00131-(MLB)**
                                       )
BRITTANY HUDSON                        )
                                       )
    Defendant                          )
                                       )
                                       )

## MOTION TO DISMISS SECOND SUPERSEDED INDICTMENT FOR REDUNDANCY AND PREJUDICE

**COMES NOW**, Brittany Hudson, in pro per, propria persona, appearing specially and moves this Honorable Court to dismiss the Second Superseded Indictment under Rule 7(c)(1), Rule 48(b), and under the Due Process Clause of the Fifth Amendment. Ms. Hudson also asks the Court to take judicial notice of the fact that she is not schooled in law and legal procedures, and is not licensed to practice law. Therefore her pleadings must be read and construed liberally.[1] The court must construe the allegations and interpret them to raise the strongest argument that they suggest.[2] In support of this motion Ms. Hudson shows as follows:

---

1See: Haines v. Kerner, 404 US at 520 (1980); Birl v. Estelle, 660 F.2d 592(1981)
2See: Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)

## INTRODUCTION

The Defendant respectfully moves this Honorable Court to Dismiss the Second Superseded Indictment pursuant to Rule 7(c)(1), Rule 48(b) and Due Process under the Fifth Amendment. The record in the case shows a pattern of:

1. Serial charging instruments alleging the same conduct;

2. Charging decisions made in retaliation for Defendant asserting legal rights; and

3. Government's admission that the most recent indictment is merely "cosmetic," not substantive.

Such duplicative indictments serve no legitimate prosecutorial purpose, confuse the issues before the Court, violate due process, and prejudice the Defendant's ability to prepare for trial.

## FACTUAL BACKGROUND

1. **Initial Criminal Information filed September 29, 2022**

The Defendant was first charged by Criminal Information on September 29, 2022, alleging conspiracy to commit wire fraud involving Amazon related conduct.

2. **Retaliation Begins**

On April 19, 2023, the Defendant filed a document in the criminal information which challenged jurisdiction as admitted on the record by AUSA McClain on August 21, 2025. The Defendant had not received any discovery pertaining to the Criminal Information also as admitted by the Government in its own response to the Defendant's

Motion to Dismiss for Violation of Discovery Order. (Doc. 202) However, the same day the Defendant filed Document 30 within the Criminal Information, the Government filed an indictment against her, that indictment alleged the same conduct, even though the criminal information still remained pending.

### 3. Retaliation Continues

On June 20, 2023, the Defendant filed a Motion to Sever, Motion to Dismiss for Violation of Speedy Trial and Motion to Suppress in the Indicted case and filed a Motion to Dismiss for Violation of Speedy Trial and Motion to Suppress in the Criminal Information. On that same day, the Government filed its first Superseded Indictment that made no changes as to the Defendant.

### 4. Admission of Retaliatory Motive

On June 27, 2023, the Government admitted on the record, "we indicted her because she did not accept our plea agreement." This is plain language and motive proven on the record of the case. The Government then asked the Court to dismiss the earlier criminal information without prejudice, "so it does not impact the indicted case."

### 5. Defendant Seeks Judicial Intervention

The record of the case will determine that the Defendant egregiously sought release, expedited review, and judicial intervention to move the matter forward. For over a year from April 15, 2024, to July 23, 2025, the Defendant sought judicial

intervention by the Court, both when Judge Batten presided over the case and again when Judge Brown was assigned to the case.

The Defendant filed a Motion for Intervention while Judge Batten was presiding over the case which specifically sought review of the Speedy Trial issues. Neither judge responded to those motions.

6. **Trial was Set then came an Ex Parte Meeting**

On August 4, 2025, Judge Brown set trial for November 10, 2025. On October 7, 2025, Judge Brown and the Government had Ex Parte conversations pertaining to the Government's plan to file the Second Superseded Indictment and the need for the trial date to be moved. On that same day, the Government sought a second Superseded Indictment alleging the same conduct. On October 16, 2025, during the arraignment of the Second Superseded Indictment, the Government admits that the second Superseded Indictment is "cosmetic" and adds nothing substantive. It "removes co-defendants who are finished."

Because the Defendant did not choose a January 2026 trial date, after forcing the Defendant to choose between a Speedy Trial and a Fair Trial, the Defendant reluctantly decided on a December 9, 2025 trial date. On November 12, 2025, a Status Conference was held before Judge Brown and Judge Brown moved the trial date again to accommodate the Government and the Court's errors in scheduling trial without the case

being certified ready for trial then allowing the Government to file a Second Superseded Indictment merely a month before trial.

## ARGUMENT

### A) Second Superseded Indictment Should Be Dismissed Under Rule 7(c)(1)

The Second Superseded Indictment should be dismissed because it adds nothing substantive and serves no legitimate purpose. Federal Rules of Criminal Procedure Rule 7(c)(1) requires that an indictment contain a "plain, concise and definite written statement of the essential facts, modify elements, or correct a legal deficiency. This renders the charging instrument surplusage, which courts have authority to strike or dismiss where it prejudices the Defendant.

### B) Serial Indictments Are Evidence of Prosecutorial Vindictiveness and Retaliation

The Supreme Court has made clear that prosecutorial decisions motivated by retaliation for the exercise of legal rights violate the Due Process Clause. See Blackledge v. Perry, 417 U.S. 21 (1974) and United States v. Goodwin, 457 U.S. 368 (1982). A presumption of vindictiveness arises where the Government:

- Increases charges after the Defendant asserts a procedural or constitutional rights, and

- Provides no objective justification

Here, the Government stated openly: "we indicted her because she did not accept our plea agreement." This statement constitutes direct evidence, not merely inference, of retaliatory motive.

Each escalation in charging the Defendant occurred only after the Defendant asserted rights:

- After filing Doc. 30 in the Criminal Information challenging jurisdiction in Doc. 30 the First Indictment was filed;

- After filing the Speedy Trial, Severance and Suppression motions, the First Superseded indictment was filed; and

- After renewed requests for judicial intervention the Second Superseded Indictment was filed, which came after not accepting a plea where the Government wanted me to dismiss the 2022 and 2023 case to charge me in a new Criminal Information in 2025.

This pattern squarely invokes Blackledge and Goodwin, which warrants dismissal.

**C) Dismissal is Justified Under Rule 48(b) Due to Unnecessary Delay**

Pursuant to Rule 48(b) this Court is authorized to dismiss the case where there is:

- Unnecessary delay;

- Delay resulting in prejudice to the Defendant; or

- Actions that undermine the integrity of the Judicial Process.

Relevant factors here include:

- Withholding discovery for an extended period of time as admitted on the record;

- Filing redundant indictments to manipulate procedural posture;

- Scheduling trial only after prolonged delay;

- Ex parte discussion followed by a cosmetic indictment; and

- Admission of retaliatory intent.

The cumulative record shows delay attributable to Government strategy, not legitimate prosecutorial need.

### D) The Second Superseded Indictment Prejudices the Defendant

The Defendant in this matter has been severely prejudiced and the record reflects that. The Defendant points this Court to the Affidavit of Prejudice filed on the record in Doc. 297. The prejudice includes:

- Confusing the issues;

- Expanding trial preparation late in the litigation;

- Creating shifting charges; and

- Causing procedural and strategic uncertainty.

Introducing a new charging document one month before trial and after an ex parte conversation - imposes exactly this type of prejudice.

### E) Government's Own Admissions Overlooked

The Government has repeatedly stated on and for the record that the Second Superseding Indictment does not include any substantive changes and that the indictment is "cosmetic". This is proven by the Government's own admission in Doc. 378 at 8, "Although she claimed that she needed those delays to challenge the Second Superseding Indictment, **that indictment contained no significant changes and resulted in no significant additional discovery."** This is almost a textbook admission that the new indictment is redundant, unnecessary and possibly multiplicitous. If the Second Superseded Indictment truly contains no, "significant changes," then it is functionally identical to the prior indictment which warrants dismissal.

Under the Fifth Amendment's Grand Jury and Double Jeopardy Clause, redundant indictments that merely restate or repackage the same charges with no substantive allegations are multiplicitous and should be dismissed. The Government has plainly admitted this in open court before District Judge Brown, Magistrate Judge Cannon, and Magistrate Judge Anand, yet all have overlooked these statements, and are not protecting the constitutional rights of the Defendant. Courts disfavor serial superseding indictments that serve no purpose other than tactical or prejudicial delay.

### F) Government's Filing Shows Prosecutorial Overreach or Gamesmanship

The Government filed this Second Superseded Indictment and continually admits that it has "no significant changes" which violates Due Process because it places the Defendant repeatedly in the posture of needing to respond to new pleadings without

legitimate justification. Even if the Government insists the indictment is the same, the mere act of refiling resets cert procedural clocks and burdens. Here, the Defendant is continually prejudiced by the repetitive filing of the same allegations. She has been denied a right to a speedy trial, she has remained detained more than 1,000 days, she is deprived of the ability to present a full defense, she is deprived of access to the Court, she is deprived of the right to appeal due to her indigency and inability to work and deprived of the ability to prepare for trial.

Here, the timeline of events proves the Gamesmanship and Overreach by the Government.

- On April 19, 2023, the Defendant filed a Motion challenging the Jurisdiction of the Court and the Government retaliated by indicting the Defendant on that same day;

- On June 20, 2023, the Defendant filed Motion to Dismiss the Indictment for Speedy Trial Violations, Motion to Sever, Motion to Suppress and other motions;

- On June 20, 2023, the Government retaliated with filing the first Superseded Indictment to circumvent the Speedy Trial right by indicting Jamar James Sr. which it knew he was deceased at the time of filing the indictment and adding Darell Burgo, no changes AT ALL within the superseded indictment pursuant to the Defendant at bar;

- On June 24, 2024, the Defendant filed another Motion to Sever;

- On June 26, 2024, the Government conceded again to the Motion to Sever again stating that there are some Bruton issues, which was omitted from the record. Judge Cannon stated the Motion was deferred to Judge Batten;

- The Motion to Sever was never determined by the Court;

- October 6, 2025, Kayricka Wortham changed her plea to guilty in 2:23-CR-131

- October 7, 2025, there was an Ex Parte Conversation between the Judge and the Government without the Defendant present;

- Immediately following the Ex Parte Communication on October 7, 2025, the Government sought the Second Superseded Indictment, on the same day;

- October 8, 2025, the Judge granted the Defendant the ability to have a laptop at the Detention Center, which had been pending since April 28, 2025;

- October 16, 2025, arraignment in the Second Superseded Indictment, here is where AUSA McClain admitted on the record that the indictment was "cosmetic" and removed co-defendants who were done;

- October 21, 2025, Pretrial Conference Hearing before Judge Brown, Government admitted again the indictment did not create any substantive changes;

- On October 23, 2025, AUSA informed the Court and the Defendant that it would have AUSA Norman Barnett and Former Chief Judge Batten as witnesses. With this information, the Defendant asked for 5 additional days to file pretrial motions not for trial to be extended. The Defendant was forced by the Court to choose between a fair trial and a speedy trial. In fact, Judge Brown in formed the Defendant that if she did not agree to move trial that she would run the risk of not having her pretrial motions determined before trial was set to begin on November 10, 2025.

- On November 5, 2025, the Motion to Sever was denied as moot, more than 800 days after the Motion to Sever was filed;

Courts can and do dismiss redundant indictments that are the same when they are not necessary to correct a defect or add new factual allegations. In the case at bar, the Government has admitted that the indictment is not necessary as it does not add any "significant changes and resulted in no significant additional discovery." This proves that the Government has not articulated any necessity for the Second Superseded Indictment to be filed a month before trial was set to begin. It was filed to blame the Defendant for requesting time to review the charging instrument because yet again, she

was not provided notice, a target letter, she was not informed of a Grand Jury. The timeline of events and the continued admission by the Government proves gamesmanship.

### G) The Government's Statements Undercuts any Claim of Harmlessness

The Government's continued admission on the record and before the Court that the Second Superseded Indictment is "cosmetic" and that there are no "substantive changes" greatly prejudices the Defendant. The Government attempts to blame the Defendant for the prejudice caused to herself by stating she has filed motions... however, if nothing changed, then the indictment provides no prosecutorial benefit and only prejudices the Defendant (forcing her to request time to review the indictment, reset deadlines, new motions, new arraignment all while preparing for trial). The Defendant in an unprecedented manner has had to file motions for trial and pretrial motions simultaneously due to the Government's unnecessary Second Superseded Indictment. Dismissal is appropriate because a Second Superseding Indictment must be substantively justified, not just an administrative or strategic maneuver.

### H) The Government's Attempt to Blame Defendant Proves Prejudice

The Government argues that the Defendant "delayed trial" by needing time to respond to the new indictment but also argue that the indictment changed nothing. Since the Indictment changed nothing, then it is unnecessary and a waste of taxpayers' dollars. Furthermore, if the indictment changes nothing, then the Government's attempt to blame

the Defendant for seeking time to analyze it shows the very prejudice caused by filing the unnecessary Second Superseded Indictment. The Court should not allow the Government to penalize the Defendant for trying to understand or challenge charges that the Government now claims were meaningless. This supports dismissal because the Defendant should not suffer the procedural consequences of a redundant indictment.

7. **Overlooking of Repeated Encroachments on Constitutional Rights**

The failure of multiple judges within this matter to address repeated encroachments on constitutional rights requires dismissal to protect the Due Process and the integrity of the proceedings.

The Fifth and Sixth Amendments of the United States Constitution guarantees:

- Due Process;

- A Fair Trial;

- Effectively and timely access to evidence;

- A meaningful opportunity to defend; and

- A speedy trial without sacrificing fairness.

The record reflects a pattern in which each presiding Judge has overlooked the cumulative constitutional violations, **permitting the Government's conduct to continue unchecked.** Courts have repeatedly held that when prosecutorial actions, combined with Judicial inaction, result in substantial prejudice and constitutional injury. Dismissal is warranted to preserve the integrity of justice. See: United States v.

Morrison, 449 U.S. 361 (1981) (Courts may dismiss where Government conduct prejudices constitutional rights). United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008) (Dismissal is appropriate when Government misconduct is combined with prejudice and judicial oversight.)

   **a. Judge Have Repeatedly Allowed the Government to Avoid Its Constitutional Obligation**

Despite repeated objections, multiple Judges:

   a. Permitted serial cosmetic indictments acknowledged by the Government to contain no substantive changes;

   b. Allowed the Government to cure its Bruton issue through strategic removal of a Co-Defendant while simultaneously withdrawing from its earlier agreement to sever;

   c. Took no corrective action despite the Government's admission that the Second Superseded Indictment is "cosmetic" and "substantive" changes do not exist;

   d. Overlooked the facts that the Government failed to produce Brady materials within the metadata needed to validate seizure warrants, which were obtained two years later and "filed" in different case numbers;

   e. Allowed trial to be repeatedly delayed not for the Defendant's benefit, but

   f. Suggested that the Defendant must choose between exercising her right to a speedy trial and receiving decisions on her pretrial motions – a choice the Constitution does not permit a Defendant be forced to make.

The cumulative judicial overlooking is not harmless.  It results in structural prejudice.

**b. Constitution Does NOT Permit Choosing Between a Speedy or Fair Trial**

The Sixth Amendment protects both rights equally, the right to speedy and a fair trial; neither can be sacrificed to preserve the other.  On November 12, 2025, the Court elevating docket management above constitutional guarantees is itself a due process violation.  The Defendant has continually expressed her request for a speedy trial since June 27, 2025.  When Judge Brown took over the case he acknowledged that request, yet informed the Defendant that she could elect to take a reduction of 7-days to file her objections to the Magistrates Report and Recommendation or move the trial date.  When she stated she should not have to choose between a speedy trial and fair trial and that if she was released then she would not need the entire 14 days to file objections, Judge Brown overlooked those statements.

On November 12, 2025, the Court informed the Defendant that she must either move trial from December 9, 2025 or she would be allowed only seven days to respond to the Court's own report and recommendation. In Barker v. Wingo, the state cannot require the Defendant to surrender speedy trial rights to obtain fairness.  In Moore v. Arizona,[3] the Defendant cannot be penalized for insisting on speedy trial rights.  In Zedner v. United States, rights cannot be waived by judicial presumption.

---

3 See: Moore v. Arizona, 414 U.S. 25 (1973)

The Constitution does not allow these types of violations and they should not continually be overlooked by this Court. She must not be forced to choose between two separate constitutional guarantees, which is a violation itself. Furthermore, the Defendant informed the Court that she could meet the deadlines if released, another recognition that prejudice arises from detention conditions, not her conduct. Judge Brown's response was that he was not releasing the Defendant, despite pretrial detention being punitive.

### c. Judicial Oversight is not Deference to Government Misconduct

While Courts offer Prosecutors discretion, that discretion ends where constitutional rights begin. Judicial oversight that allows admitted cosmetic indictments, unexplained ex parte contact, uncorrected discovery failures, and serial delays to accumulate violates the constitutional command that Courts act as buffers between the Government and the individual. Here, it is clear that the oversight of the Government's misconduct is profound. As proven, the record clearly reflects many admitted violations with proof on the record, yet the Judge in this matter is clearly turning a blind eye to the Government's actions. The Government's second superseding indictment – which it admits is merely cosmetic, has extended proceedings for tactical advantage, causing further delay.

### d. The Cumulative Effect of Judicial Inaction Prejudices the Defense and Comprises the Integrity of the Proceedings

Courts routinely dismiss where the cumulative effect of errors threatens the fairness of the trial. See United States v. Derrick, 163 F.3d 799 (4th Cir. 1998)

Here, prejudice is ongoing, procedural and structural:

- Shifting charging instruments;

- Shifting trial dates, especially while the Defendant remains detained more than 1,000 days;

- No metadata for warrants;

- No letter of intent to use evidence at trial;

- Repeated Government admissions that the charging documents have no substantive value.

This proves that Dismissal is the only remedy capable of restoring integrity to the process.

## 8. **PREJUDICE IS CLEARLY ESTABLISHED**

The record demonstrates actual, substantial, and compounding prejudice satisfying the constitutional standard of Barker v. Wingo, 407 U.S. 514, 533, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), Strunk v. United States, 412 U.S. 434, 440, 93 S. Ct. 2260, 37 L. Ed. 2d 56 (1973) United States v. Morrison, 449 U.S. 361 (1981) and United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008) and other related precedent. The prejudice arises from:

a. Nearly three years of pretrial detention without a conviction;

17

b. Repeated trial delays directly attributable to the Government's conduct;

c. Denial of essential tools to review discovery and prepare a defense;

d. Government admissions that it intends to use evidence that the Defendant has not been able to access;

e. Lack of medical treatment; and

f. Forced to choose between a constitutional speedy trial and fair trial, which the Constitution does not permit;

g. Languishing under the same charges for more than three years in two cases;

Each category independently establishes prejudice; together they form overwhelming proof.

## 1. Three years of Pretrial Detention

The Defendant has been detained close to three years, which alone establishes presumptive prejudice. The Pretrial detention approaching three years without a finding of guilt, despite being charged with offenses that do not fall under 18 U.S.C § 3142(f)(1), despite never having been convicted of a crime, despite not being a flight risk, and despite a record that provides no basis to conclude danger.

Courts repeatedly hold that extended pretrial detention, especially where the Government contributes to delay constitutes prejudice:

- Barker v. Wingo, (length of delay triggers presumption of prejudice);

- United States v. Gonzales-Claudio,[4] (Pretrial detention combined with prosecutorial delay violates due process);

- United States v. Accetturo,[5] (Pretrial detention cannot be unreasonably prolonged where charges do not qualify under 18 U.S.C. § 3142(f)(1).

The Defendant's prolonged detention without trial is unconstitutional standing alone. The prejudice only escalates when viewed alongside the Governments conduct.

## 2. Trial Repeated Delayed

The Court and the Government have attempted to place the fault on the Defendants filing of motions as the reason for the delay. Factually, there has only been one motion that required a hearing which was the Motion to Suppress. Every other motion that the Court has reviewed has been summarily denied without hearings. At no point did the filings actually delay the Court when the Court and the Government had more than a year to file its responses and issue Report and Recommendations. However, in the Judges continued oversight, the magistrate judge failed to set briefing deadlines on the Motions that were filed.

Furthermore, there was no movement at all within the case while Judge Batten was assigned to the case. The moment he retired, then the case began to proceed, despite the continued requests for expedited hearings. The Defendant did file many

---

4 See: United States v. Gonzales-Claudio, 806 F.2d 334, 338 (2d Cir. 1986)
5 See: United States v. Accetturo, 783 F.2d 382, 384 (3d Cir. 1986)

motions seeking release upon realizing that Court failed to require the Government to proceed the matter along.

The admissions, record and timeline shows a pattern:

- Trial was set for November 10, 2025,

- Then pushed to December 9, 2025;

- Then pushed again to January 20, 2026 over the Defendant's objection.

The Defendant did not request these delays. The delay resulted from:

- Serial cosmetic indictments;

- lack of discovery production;

- Government failure to provide metadata of warrants; and

- Government's failure to bring its case to trial;

- Judicial inability to resolve pretrial motions before trial due to the Government's late disclosures and its own failure to resolve motions within 30 days as required pursuant to United States v. Mers, 701 F.2d 1321, 1337 (11th Cir. 1983) and;

  - Ex Parte communications leading to a new indictment merely a month before trial was set to begin, which is admittedly "cosmetic"

Under Doggett v. United States, 505 U.S. 647 (1992), when delay is attributable to the Government, prejudice is presumed.

**3. Discovery Barriers**

The Defendant has repeatedly informed the Court and Prosecution of the barriers when reviewing discovery. She has also repeatedly requested release or alternatively access to additional legal material and additional tools to conduct research. The discovery issues have been ongoing since before Finlayson was removed as counsel, which is also placed on the record.

Beginning in April of 2024, the Defendant notified the Court that she could not adequately review discovery while detained. In March of 2025, the Defendant filed a Motion seeking a laptop, additional time in the law library and additional legal material. On May 8, 2025, the Government objected to the Motion stating, that because the Defendant has filed "typed" documents that "cite case law" and are "well written" they opposed the Motion for additional time in the law library and additional tools. Judge Cannon denied the request and she re-appointed Mr. Brandon Thomas to assist with "discovery issues." Judge Cannon told standby counsel to "assist" though he is not permitted to draft filings or manage defense strategy for a pro se litigant.

This constitutes prejudice under Bounds v. Smith, Lewis v. Casey, and Faretta v. California, because:

    a. A pro se defendant must be provided a meaningful opportunity to prepare a defense;

    b. Courts may not deny essential discovery – review tools on the basis that filings are "well-written"; and

**c.** Standby counsel cannot substitute for access to evidence.

## 9. Government's Admission that It Intends to Use Evidence on Hard Drive

On October 23, 2025, Government has admitted on the record of this case that there is evidence on the hard drive, which was received by the Defendant on December 18, 2024, which it intends to use at trial. This same hard drive the Defendant had been having a hard time reviewing since December of 2024. As stated above, in March of 2024, the Defendant sought a laptop from the Court. The standby attorney did not assist with that until October 7, 2025, within the Ex parte communication. There is still information on the drive which cannot be reviewed.

The Supreme Court has determined that prejudice exists where the Defendant cannot inspect or review evidence that the Government intends to rely on. See Brady v. Maryland, 373 U.S. 83, 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) and United States v. Valenzuela-Bernal, 458 U.S. 858 (1982); Unied States v. Spagnuolo, 549 F.2d 705 (9th Cir. 1977).

This is not speculative prejudice, it is concrete, demonstrable harm, Judge Brown eventually ordered a laptop on October 7, 2025 – over a year after the issue was raised, and only because the Ex Parte hearing and the Government plans to use material the Defendant had no opportunity to review in an effort lesson the prejudice of her inability to prepare for trial. When factually speaking, if the laptop had been ordered when it was requested instead of dragging on for more than seven months.

10. **Prejudice is Not Merely Possible – IT IS PROVEN!**

The cumulative effect is overwhelming based on the above-mentioned factors.

Prejudice is not hypothetical. It is structural, ongoing and irremediable absent

dismissals.

11. **CONCLUSION**

For all the reasons set forth above, the Defendant respectfully moves this

Honorable Court:

- Dismiss the Second Superseded Indictment; or alternatively

- Strike the redundant charging instrument and order the Government to

  proceed on the prior indictment; or

- Grant any other relief appropriate to remedy the prejudice and

  constitutional violations described here in.

Dated: This 3rd day of **DECEMBER** 2025.


Respectfully submitted, without prejudice,


_____
Brittany Hudson, without recourse
USMS 24309-510
c/o P.O. BOX 730
Lovejoy, GA 30250

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing MOTION TO DISMISS SECOND SUPERSEDED INDICTMENT FOR REDUNDANCY AND PREJUDICE has been submitted to Robert A. Deyton Detention Facility mailbox via United States Postal Service mail to the following: UNITED STATES DISTRICT COURT for the Northern District of Georgia, 2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309 on this _3rd_ day of **DECEMBER**, 2025.

Respectfully submitted without prejudice,

Brittany Hudson, without recourse
USMS 24309-510
c/o P.O. BOX 730
Lovejoy, Georgia [30250]

## CC
**Angela Adams**
United States Attorney -Atl
75 Ted Turner Drive Southwest
600 U.S. Courthouse
Atlanta, GA 30303
470-581-6000
Email: Angela.adams@usdoj.gov


**Stephen H. McClain**
600 United States Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404-581-6000
Fax: 404-581-6150
Email: stephen.mcclain@usdoj.gov

# AFFIDAVIT IN SUPPORT OF SERVICE

This Affidavit in support of **MOTION TO DISMISS SECOND SUPERSEDED INDICTMENT FOR REDUNDANCY AND PREJUDICE** executed and administered by a commissioned officer, i.e., Notary Public in accordance who is also acknowledging same [in accordance Fed.R.Evid. 902(1)(B)]. This is also to certify that this document was placed in Robert A. Deyton Correction Facility mailbox to be mailed out on this _3ʳᵈ_ day of **DECEMBER, 2025**.

## JURAT

County of ~~Clayton~~ Henry )

)

State of Georgia )

SUBSCRIBED AND SWORN TO before me this _3ʳᵈ_ day of **DECEMBER, 2025**.

_____     Seal
Notary Public Signature

**My Commission Expires** _7/13/2029_

LINDA M. JONES
NOTARY
EXPIRES
GEORGIA
July 13, 2029
PUBLIC
HENRY COUNTY