## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

United States of America,

v.                                                    Case No. 1:23-cr-131-MLB

Brittany Hudson,

                 Defendant.

_____/

## ORDER

A Magistrate Judge issued a Report and Recommendation saying this Court should deny Defendant Brittany Hudson's Motions to Suppress Evidence (Dkts. 21, 27, 126, 180 and 313), Motion to Dismiss pursuant to Fed. R. Crim. P. 12 (Dkt. 143), and Motion to Dismiss for Prosecutorial Vindictiveness and Misconduct (Dkt. 146). (Dkt. 376.) Defendant Hudson filed objections. (Dkt. 388.) The Court adopts the Magistrate Judge's recommendations (with modifications set herein) and denies all Defendant Hudson's motions.

## I.    Background Facts

In 2022, Defendant Hudson attended a proffer session with the United States about her involvement in alleged fraudulent conduct

against Amazon and signed a waiver of indictment allowing the United States to charge her with a felony offense by way of criminal information. (Case 1:22-cr-362, Dkts. 1, 2, 3-1, 6 at 2; Dkt. 225-1.)  In that information, the United States alleged Defendant Hudson and others defrauded Amazon by causing Amazon to pay fraudulent vendor invoices totaling $9.4 million.  (Case 1:22-cr-362, Dkt. 1.)  The information, however, included only one conspiracy charge.  (*Id.*)  Defendant Hudson allowed the United States to file that charging document in anticipation of pleading guilty to it rather than being indicted on broader charges.  (Dkt. 133 at 13.)

At Defendant Hudson's arraignment, a magistrate judge—with the United States's recommendation—granted her bond.  (Case 1:22-cr-362, Dkt. 77 at 11-13.)  Defendant Hudson did not immediately enter a plea to the information because she applied for deferred prosecution in an alternative resolution process known as "ATL Court."  (Dkt. 133 at 14.)  The United States filed a similar one-count information against one of Defendant Hudson's co-conspirators for the same Amazon fraud.  (Case 1:22-cr-361, Dkt. 1.)  That person plead guilty in late November 2022,

although she later tried to withdraw that plea. (Case 1:22-cr-361, Dkts. 9, 25.)

On January 24, 2023, the United States learned Defendant Hudson and her co-conspirator committed new crimes while on bond. (Case 1:22-cr-362, Dkt. 6 at 3-5.) Those crimes included both forging former Chief Judge Batten's signature on falsified court documents to make it appear the criminal information against her co-conspirator had been dismissed and submitting falsified financial records in a business transaction to acquire franchises in some kind of hookah lounge. (Dkt. 253 at 11-12.) The lead agent testified at the suppression hearing that the franchisor contacted law enforcement when he became suspicious of Defendant Hudson's and her con-conspirator's representations to him, that the franchisor sent him various documents Defendant Hudson and her co-conspirator had provided as part of the transaction, and that he confirmed the fraudulent nature of those documents (including court documents with the forged signature of former Chief Judge Batten and forged bank records that made it appear Defendant Hudson and her co-conspirator had hundreds of thousands of dollars more than they had). (Dkt. 253 at 14-16, 23-27.)

On January 26, 2023, the United States moved the court to issue an arrest warrant for Defendant Hudson, revoke her bond, and order her detention. (Case 1:22-cr-362, Dkts. 6.)[1] The Magistrate Judge granted that motion, finding Defendant Hudson had violated the terms of her bond by committing criminal offenses while on bond. (Case 1:22-cr-362, Dkt. 13.) A magistrate judge signed an arrest warrant that same day— January 26, 2023. (Case 1:22-cr-362, Dkt. 20.)

The franchisor told law enforcement Defendant Hudson and her co-conspirator were planning to come to one of the hookah lounges on January 27, 2023 to sign the final documents and take the keys to the lounges. (Dkt. 253 at 15.) Agents set up surveillance, saw defendant Hudson arrive at the lounge driving a pickup truck, arrested her after she parked the truck, and took her to the federal courthouse. (Dkt. 253 at 15-16, 28.) Just minutes before Defendant Hudson arrived, she sent the franchisor an email that contained a false document stating the Amazon charges against her had been dropped and bearing former Chief Judge Batten's forged signature. (Dkts. 248-1, 253 at 20-22.) The

---

[1] The United States did the same against the co-conspirator who had also been released on bond. (Case 1:22-cr-361, Dkt. 27.)

franchisor immediately flipped Defendant Hudson's email to law enforcement. (*Id.*)

Before taking Defendant Hudson to the federal building, the lead agent made her place a blue cellphone she had been carrying at the time of her arrest back in her truck. (*Id.* at 28.) He did that because the marshals who would be transporting Defendant Hudson to the federal building had a policy of not allowing people within their custody to carry cellphones or other personal items. (*Id.*) He then had her leave her keys inside the hookah lounge, which was closed and locked. (*Id.*) When the agents got back to the federal building and told the prosecuting attorney they had not seized her phone, the attorney told the agents to go back and get it. (*Id.* at 28-29). After the lead agent returned to the parking lot and as he stood near Defendant Hudson's truck (but before entering it), the agent looked inside and saw an open backpack through the driver's window containing several documents and a laptop computer. (*Id.* at 29.) The backpack was unzipped and sitting on the passenger's seat. (*Id.* at 30.) He opened the door and seized property he believed would contain incriminating evidence related to the attempted fraud including the blue cellphone he had told Defendant Hudson to place in

the truck, a white cellphone, a reMarkable Tablet (an electronic note-taking device), and the backpack.  (*Id.* at 30.)  Agents later obtained a search warrant for those electronic devices.  (Dkt. 319-1.)

In April 2023, the United States obtained an indictment in this case, charging Defendant Hudson and several codefendants with conspiring to defraud Amazon (as also alleged in the 2022 case), several substantive charges arising from that fraudulent activity, and several fraud charges arising from her activity involving the hookah lounges. (Dkt. 1.)  The United States later obtained two superseding indictments. (Dkts. 28, 341.)

Defendant Hudson filed a series of motions seeking to suppress the search and seizure of the phones and other items taken from her truck as well as bank records the United States obtained pursuant to grand jury subpoenas.  (Dkts. 21, 27, 126, 180, 313.)  She also moved to dismiss the second superseding indictment for a variety of reasons.  (Dkt. 143.) Finally, she moved to dismiss the superseding indictment for vindictive prosecution and misconduct, saying the prosecuting attorney obtained the indictment against her vindictively because she did not plead guilty to the information and that, in doing so, the prosecuting attorney

breached the terms of her proffer agreement. (Dkt. 146.) The Magistrate Judge held an evidentiary hearing at which the investigating agent testified (as set forth above) about his investigation and arrest of Defendant Hudson. (Dkt. 253.) The Magistrate Judge then issued her report, saying the Court should deny all her motions. (Dkts. 376.) Defendant Hudson filed objections. (Dkt. 388.) The Court held additional hearings to discuss the pre-indictment seizure of Defendant Hudson's bank accounts (an issue the Magistrate Judge failed to address).[2]

## II.    Standard of Review

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's Report & recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge should "give fresh consideration to those issues to which

---

[2] Defendant Hudson also filed a motion for leave to file her objections late and for additional pages. (Dkt. 389.) The Court grants that motion.

7

specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted). For those findings and recommendations to which a party has not asserted objections, the court must conduct a plain error review of the record. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983). Parties filing objections to a magistrate judge's recommendation must specifically identify those findings to which they object. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id.* "A district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *See United States v. Russell,* 2023 WL 2062592, at *8 (11th Cir. Feb. 17, 2023).

## III. Discussion

Defendant Hudson raises a series of objections the Court considers general because she makes no effort to tether them to a specific legal conclusion or factual finding by the Magistrate Judge. Defendant Hudson, for example, says she "objects to every factual finding, every legal conclusion, every case relied on, every omission, every credibility determination, and every recommendation in the R&R." (Dkt. 388 at 2.)

She then goes on claiming to provide more detail but just raises more general objections. (*Id.*) In other parts of her objections, Defendant Hudson enunciates specific objections on these topics. The Court thus considers her "objection to everything" as a general objection, does not consider it, and addresses her specific objections that raise these issues.

Defendant Hudson also raises a general claim the Magistrate Judge "fails to liberally construe" her pro se filings because she failed to "interpret [her arguments] to raise the strongest arguments they suggest." (Dkt. 388 at 5.) She offers no specific examples of how the Magistrate Judge erred in this regard. And the leniency standard does not mean the Court must rewrite or reinterpret her arguments to make arguments she fails to make. The Eleventh Circuit has explained that the duty to liberally construe pro se motions does not require the Court to "serve as *de facto* counsel for a party, or ... rewrite an otherwise deficient pleading in order to sustain an action." *United States v. Benitez*, 2024 WL 4224666, at *1 (11th Cir. Sept. 18, 2024) (quoting *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014)).[3] The Court sees no

---

[3] The Court recognizes *Benitez* is unpublished and not binding. The Court cites it and other unpublished cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th

instance in which the Magistrate Judge failed in her obligation to Defendant Hudson's pro se status. So the Court overrules this general objection.

She also contends the Magistrate Judge "improperly shifted the burden of proof regarding the legality of warrantless searches and seizures" onto her. (Dkt. 388 at 6.) While purporting to quote the Magistrate Judge, she neither includes record citations nor identifies a specific instance in which the Court allegedly flipped the burden. Having reviewed the Report and Recommendation, the Court notes the Magistrate Judge required the United States to establish the constitutionality of the warrantless search of her truck and the probable cause for the search of her electronic devices. (Dkt. 376 at 11-12, 13-14.) The Magistrate Judge placed no burden on Defendant Hudson regarding those searches. The Magistrate Judge did, however, conclude Defendant Hudson was not entitled to a so-called *Franks* hearing because she "fail[ed] to make a substantial preliminary showing that [the agent's] statement was made 'intentionally or with reckless disregard for truth,'

---

Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

and that his statement was 'necessary to the finding of probable cause.'"
(Dkt. 376 at 14.)  But that was a correct statement of the law and not an
improper flipping of the burden.  *United States v. Leonard*, 4 F.4th 1134,
1147-48 (11th Cir. 2021) ("even in the face of a deliberate omission, no
hearing is required when there was enough evidence to support a
probable cause finding even after considering the effect of the omission").
The Magistrate Judge also noted Defendant Hudson failed to prove she
had a "personal right or privilege" in the bank records the United States
obtained as part of its grand jury process.  (Dkt. 376 at 16.)  But, again,
she was correct to do so as "a party alleging an unconstitutional search
under the Fourth Amendment must establish *both* a subjective and an
objective expectation of privacy to succeed."  *United States v. Robinson*,
62 F.3d 1325, 1328 (11th Cir. 1995) (emphasis in original).  Since an
individual generally has no expectation of privacy in records his or her
bank possesses, *United States v. Miller*, 425 U.S. 435, 443 (1976)
(recognizing individuals have no Fourth Amendment expectation of
privacy in their financial records while those records are in hands of third
parties), Defendant Hudson was required to show her privacy interest in
these specific records.  The Court can find no instance in which the

11

Magistrate Judge improperly flipped the burden of proof or persuasion and denies this general objection as well.

## A.     Motion to Suppress Search of Vehicle and Electronic Devices

Defendant Hudson moved to suppress the seizure of the papers and electronic devices from her truck, the subsequent search of those electronic devices, and the collection of bank records the United States obtained during the grand jury investigation.  (Dkts. 21, 27, 126, 180, 313.)   Having reviewed the Report and Recommendation, Defendant Hudson's objections, the transcript of the evidentiary hearing, and the other items identified herein—and for the reasons explained below—the Court denies each of Defendant Hudson's attacks on the United States's collection of evidence.

### 1. Constitutionality of Bank Account Seizures

In August 2022, the United States seized one or more bank accounts belonging to Defendant Hudson.  (Dkt. 253 at 20.)  Defendant Hudson claims the August 2022 seizure was "the single most important constitutional violation" in her motions to suppress because "all evidence flowing from this unconstitutional event—including the proffer, the later investigation, the January 27, 2023 arrest, and the application for

subsequent warrants must be suppressed" as "fruit-of the poisonous-tree." (Dkt. 388 at 8.) Defendant Hudson correctly claims the Magistrate Judge failed to consider this claim, perhaps because Defendant Hudson never mentioned it at the hearing despite the prosecutor referring to the seizure warrants. As part of this argument, Defendant Hudson contends the testifying agent conceded he seized the accounts through a grand jury subpoena and without a warrant. (*Id.* at 20, 22.) She even goes so far as to say the United States concedes it acted without a warrant. (*Id.* at 7.) She says this despite the fact the Assistant United States Attorney made it clear at the hearing that the United States had provided Defendant Hudson the seizure warrants. (Dkt. 253 at 18.)

Putting aside whether the fruit-of-the-poisonous-tree doctrine might extends as far as Defendant Hudson hopes—and because the Magistrate Judge failed to address the issue—the Court held two hearings to receive evidence and argument about the August 2022 seizure of Defendant Hudson's bank accounts. At the first hearing, the United States introduced fourteen seizure warrants it obtained on August 3, 2022 to seize various accounts at various banks as part of the investigation. (Dkts. 401 at 16, 405-1 through 405-28.) The warrants

identify only one Bank of America account (ending in 3253) under
Defendant Hudson's name. (Dkt. 405-6.) Because Defendant Hudson
said she was not prepared, the Court rescheduled the hearing for a couple
of days later. (Dkt. 401 at 6, 11, 12.)

At the second hearing, Defendant Hudson identified thirteen
accounts that she claims the United States improperly seized. (Dkt. 403
at 4-6.) That included the Bank of America account identified above, a
Wells Fargo account (ending in 9310) in the name of Angie Mobley
identified in one of the August 3, 2022 seizure warrants, and two other
accounts (ending in 5198 and 5180) identified in seizure warrants the
United States obtained in January 2023. (Dkts. 403 at 5; 405-4; Case
1:23-mj-39, Dkt. 1.) The other accounts she identified are not listed in
any seizure warrants, and the United States proffered that it had not
seized those accounts but the banks might have frozen the accounts on
its own accord. (Dkt. 403 at 19-10, 6-17.)

The United States was not prepared to address the January 2023
seizures as Defendant Hudson had never identified them as included in
her motion to suppress. Correct: she repeatedly identified the seizures
at issue as having occurred on or about August 1, 2022. (Dkt. 388 at 1,

3, 7, 8, 9.)  At the hearing, Defendant Hudson insisted the United States had seized those two accounts in August 2022, and the United States (denying it did so) opined that perhaps the banks froze the accounts in August 2022 and Defendant Hudson mistook that for law enforcement action.  (Dkt. 403 at 16-18.)[4]

Defendant Hudson also said she was not prepared to move forward with the hearing.  So the Court (with Defendant Hudson's agreement) explained it would address at the start of trial the limited issue of whether the United States seized money in these four accounts pursuant to valid warrants.  The Court thus holds this issue open until then.[5]

## 2. Constitutionality of Defendant Hudson's Arrest

The Magistrate Judge concluded the agents arrested Defendant Hudson on January 27, 2023 after obtaining valid arrest warrants.  (Dkt. 376 at 5.)  Defendant Hudson challenges this finding, saying the warrant was unconstitutional because it was "based on an unsworn motion to

---

[4] The January 2023 seizure warrant suggests this as well.  (Case 1:23-mj-39 at ¶¶ 35-36.)

[5] Defendant Hudson did not challenge the existence of probable cause to justify the warrant, instead challenging only the existence of the warrant.  But even if she had, that would fail as the warrant affidavit established probable cause to believe all the accounts identified therein contained the proceeds of wire fraud, bank fraud, and money laundering.

revoke bond pursuant to 18 U.S.C. § 3148 while the Fourth Amendment requires that any arrest warrant be supported by oath or affirmation." (Dkt. 388 at 11.)  She claims her arrest was thus "void ab initio and all evidence seized thereafter must be suppressed."  (*Id.*)  Putting aside whether an invalid arrest under the facts at issue here would require suppression of items seized pursuant to the automobile exception to the warrant requirement, electronic evidence seized from the devices pursuant to a subsequent search warrant, or her statements during a subsequent proffer she attended with counsel, the Court rejects Defendant Hudson's contention that the arrest was unconstitutional.

The Bail Reform Act states that a person who has been released on bond, "and who has violated a condition of his [or her] release, is subject to a revocation of release . . ."  *See* 18 U.S.C. § 3148(a).  An attorney for the United States initiates the revocation process by filing a motion with the district court.  *Id.* at § 3148(b).  The court then "may issue a warrant for the arrest of a person charged with violating a condition of release." *Id.* at § 3148(b).  Since a defendant in this situation has already been charged with a criminal offense and since the court is revoking bond for the defendant's noncompliance with the terms of that bond, no affidavit

16

is necessary. *United States v. Garcia-Avalino*, 444 F.3d 444, 445–46 (5th Cir. 2006) ("[A]t least two statutes have authorized the issuance of a warrant not supported by sworn facts. Pursuant to 18 U.S.C. § 3148(b), a district court may issue a warrant for the arrest of someone on pretrial release based *solely* on a motion by the government.") (emphasis added); *United States v. Collazo-Castro*, 660 F.3d 516, 521 (1st Cir. 2011) ("[I]n the case of a criminal defendant who is on pretrial release pending trial, there is no sworn facts requirement. Rather, an attorney for the Government may initiate a proceeding for revocation of an order of release by filing a *motion* with the district court [and a] judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release.") (emphasis in original).

That's what happened here. The United States filed a motion to revoke Defendant Hudson's bond, laying out evidence of Defendant Hudson's fraudulent conduct in trying to buy the hookah lounges and asserting there was probable cause to believe she had committed new criminal offenses (including wire fraud and aggravated identity theft). (Dkt. 6 at 7.) The court issued a warrant. (Case 1:22-cr-362, Dkt. 20; Dkt. 253 at 15.) Consistent with the Bail Reform Act, the court later

17

held a hearing to determine whether there was probable cause to believe Defendant Hudson had violated the conditions of her release and should be detained. (Case 1:22-cr-362, Dkts. 9, 11.) Defendant Hudson cites no authority that this process is unconstitutional, and the Court is aware of none.

In the Report and Recommendation, the Magistrate Judge cited the agent's testimony that he obtained a warrant for Defendant Hudson's arrest. Defendant Hudson suggests the United States has somehow denied the existence of a warrant and thus the Magistrate Judge erred in crediting that testimony. (Dkt. 388 at 11-12.) The Court does not really understand this argument. A copy of the warrant—signed the day before Defendant Hudson's arrest—is in the Court's docket. (Case 1:22-cr-362, Dkt. 20.) And—at the evidentiary hearing—Defendant Hudson did not even try to impeach the agent's testimony that he obtained the warrant. The Court overrules Defendant Hudson's objection to the Magistrate Judge's conclusion that the agent arrested her pursuant to a valid arrest warrant.[6]

---

[6] In concluding another magistrate judge issued the arrest warrant, the Magistrate Judge cited the docket for a case involving Defendant Hudson's diversion application in ATL Court. (Dkt. 376 at 12 (citing 1:22-

### 3. Constitutionality of the Vehicle Search

The Eleventh Circuit has explained that the automobile exception to the warrant requirement allows police to conduct a warrantless search of a vehicle if (1) the vehicle is readily mobile and (2) the police have probable cause to believe contraband or evidence of a crime will be found in the vehicle. *United States v. Lindsey*, 482 F.4th 1285, 1293 (11th Cir. 2007) (citing United *States v. Watts,* 329 F.3d 1282, 1286 (11th Cir.2003)). The Magistrate Judge found this exception applicable to the agent's search of Defendant Hudson's truck. (Dkt. 376 at 11-12.) As to mobility, the Magistrate Judge correctly noted agents had seen Defendant Hudson driving the truck to the hookah lounge just moments before her arrest. (Dkts 376 at 10; 253 at 18.) The Magistrate Judge also concluded the agents had probable cause to believe evidence of her crimes would be

---

ax-11).) Defendant Hudson objects, claiming the Magistrate Judge relied on sealed and "extra record authority" to which she does not have access. The Court believes the Magistrate Judge erred in citing the ATL Court docket and meant to cite the docket in Case 1:22-cr-362, the case in which the United States filed the criminal information involving the Amazon fraud and in which the Court granted her bond and later ordered her arrest. The Court concludes this because the ATL Court proceeding had nothing to do with Defendant Hudson's arrest and because two of the three documents the Magistrate Judge cited are the United States's motion to revoke her bond and the arrest warrant the other magistrate judge signed in the 2022 criminal case. (Case 1:22-cr-362, Dkt. 6, 20.)

found in the vehicle based on evidence agents uncovered about Defendant Hudson's fraudulent efforts to buy the hookah lounge, including evidence she and her co-conspirator emailing forged and altered documents to the franchisor, that she had emailed forged documents to the owner of the hookah lounge just minutes before arriving in her truck, and because—upon looking in the window of the truck—he could see documents and a laptop computer in plain view. (*Id.* at 12.) As the Magistrate Judge noted, the lead agent concluded those items were likely to contain evidence of her criminal activity. He explained his conclusion about the laptop:

> [t]he elements of this [Amazon] criminal activity was based on the vendor system, which is an electronic-based system. And I knew emails had been generated for fake vendor accounts. Invoices had been submitted electronically for this vendor account. Fake documents that we just received that morning purporting to be dismissal documents had been generated electronically, so all of these things led me to believe that there might be evidentiary value in that laptop.

(Dkt. 253 at 31.) He separately explained he was interested in the paper documents because the owner of the hookah lounge had sent him false bank documents Defendant Hudson had provided and the agent believed those had been paper documents and much of her other fraudulent

20

activity involved invoices and evidence that could have been in electronic or paper form. (*Id.* at 31.)

Defendant Hudson raises several objections, none of which seriously challenge the Magistrate Judge's recommendation. First, she claims the automobile except requires evidence "[t]he arrestee is unsecured and within reaching distance of the vehicle," which of course she was not. (Dkt. 388 at 13.) The Eleventh Circuit has recognized no such requirement. Second, she argues the Magistrate Judge erred in finding her truck was "readily mobile" simply because it was operable. (Dkt. 388 at 16.) As part of this, she says the search occurred after she was in custody, when the agents could have obtained a warrant, and when they were not worried it was "readily mobile." (*Id.* at 16.) But the Magistrate Judge applied the correct standard: "[t]he requirement of mobility is satisfied merely if the automobile is operational." *Lindsay*, 482 F.4th at 1293 (internal quotation omitted). No other exigency is required. *Id.* at 1293 n.6. That Defendant Hudson could not have driven her truck after being arrested did make the truck inoperable as someone else could have come to take it and the evidence within. The delay between the time of Defendant Hudson's arrest and the search also does

not matter as "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure or that other exigent circumstances exist." *Lindsey*, 482 F.3d at 1293 (internal quotation omitted). Third, she argues the automobile exception did not authorize the search and seizure of the electronic devices in her truck because phones and computers are not "automobile containers." (Dkt. 388 at 16.) In support of this argument she cites the Supreme Court's decision in *Riley v. California*, 573 U.S. 373 (2014), a case in which the Court considered "whether the police may, without a warrant, search digital information on a cellphone seized from an individual who has been arrested." *Id.* at 378. But that is not what happened here. The agent seized the cellphones, laptop, and tablet and then applied for a search warrant to access the devices. The Supreme Court in *Riley* confirmed the appropriateness of that process. *Id.* at 387 (recognizing law enforcement ability to "seize and secure cell . . . phones to prevent destruction of evidence while seeking a warrant").

Fourth, she argues the agent could not have seen the backpack, papers, and computer while standing outside the truck because the vehicle had tinted windows and the backpack was zipped closed and on

the floor behind the driver's seat. (Dkt. 388 at 13.) So she claims the agent manufactured "plain view" probable cause by requiring her to place her blue cellphone back in the vehicle. (*Id.*) Essentially, she claims the agent peaked while making her open the door to put her phone in the truck. No evidence support's Defendant Hudson's allegation. She never testified the backpack was behind the driver's seat, that tinted windows would have prevented the agent from looking into the truck, or that the agent peaked while placing her phone in the truck. On the other hand, the agent testified unequivocally that the backpack was unzipped, that it was sitting on the passenger seat, and that he could see the laptop and papers in plain view from outside the vehicle. (Dkt. 253 at 30.) He described his probable cause—based on his observations from outside the truck and his knowledge of the investigation and Defendant Hudson's use of documents and electronic devices to commit the various frauds— without reliance on anything to do with the blue phone.

Defendant Hudson contends the agent's testimony "contradicts itself about what exactly [was] seen, where it was located, and what he believed at the time. (Dkt. 388 at 17.) She neither explains what she means nor cites any allegedly problematic testimony. And the Court sees

none.  The Magistrate Judge found the agent's testimony credible and reliable (Dkt. 376 at 17) and, absent any specific objection to that conclusion, the Court adopts it.

Defendant Hudson also says "visibility does not create probable cause," that electronic devices are "not contraband," and courts routinely reject "plain view of electronics which equals probable cause arguments." (Dkt. 388 at 17.)  She does not build this out, and the cases she cites stand for no such general proposition.  In addition, probable cause does not require contraband.  The inquiry in the automobile context is whether "under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Lindsey*, 482 at 1293.  "[P]robable cause is a fluid concept—turning on the assessment or probabilities in particular factual contexts—not readily or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  As already explained, the agent was familiar with Defendant Hudson's fraudulent activity (including her use of doctored bank records, paper documents, and electronic documents to commit fraud), he saw her drive the truck to a meeting that was part of her fraudulent activity, he knew she sent a fraudulent document via email

24

just minutes before that meeting (and thus likely from her truck), and he saw a stack of papers and a laptop computer in that truck. All of that provided a fair probability that Defendant Hudson would have evidence of her illegal activity in her truck.[7]

The Magistrate Judge made two errors regarding the seizure of the blue cellphone. First, she overlooked the agent's testimony that he directed Defendant Hudson to place the blue phone back in her truck at the time of her arrest, wrongly concluding the agent seized the blue phone when he first encountered her (Dkt. 376 at 5) and, second, she concluded that seizure was valid as a search incident to arrest. (*Id.* at 12.) Defendant Hudson objects to both. (Dkt. 388 at 13, 18.) The Court sustains those objections. But that does not matter since—as explained above—the blue cellphone was properly seized from the truck. Since the agents did not rely upon Defendant Hudson having placed the blue phone

---

[7] Defendant Hudson contends the Magistrate Judge "improperly relies on officer hindsight rather than contemporaneous evidence." (Dkt. 388 at 17.) The Court does not understand this general objection and rejects it. She also claims the Magistrate Judge applied the wrong standard for probable cause in holding there was a "fair probability" evidence of the crime would be found in Defendant Hudson's truck. (Dkt. 388 at 18.) That is, of course, an enunciation of probable cause and the exact words the Eleventh Circuit used in explaining the standard. *Lindsey,* 482 F.3d at 1293.

in the truck to establish probable cause to believe evidence of the crime would be in the truck, it makes no difference that they directed her to take the phone from one area in which they could have seized it (her person upon her arrest) and place it in another area from which they could seize it (inside her operable truck).

The Court thus overrules Defendant Hudson's objections, adopts the Magistrate Judge conclusion that the agent lawfully searched Defendant Hudson's truck under the automobile exception to the warrant requirement, and denies her motion to suppress the seizure of the items from her truck.

### 4. Refusal to Hold *Franks* Hearing

In his affidavit in support of the search warrant for the electronic devices recovered from Defendant Hudson's truck, the agent averred that law enforcement found both the blue and the white cellphones on Defendant Hudson.  (Dkt. 319-1 at 9.)  He also averred that the laptop and tablet were found in her vehicle "during a search incident to arrest." (*Id.*)  As explained, that was not correct.  He should have explained that the blue phone was found on her, that she placed it in the truck, and law enforcement searched the truck and recovered all of the electronic devices

26

after arresting Defendant Hudson, taking her to jail, and returning to the truck. The Magistrate Judge concluded these errors did not invalidate the warrant or necessitate a *Franks* hearing because the inclusion of the allegedly omitted information would not have prevented a finding of probable cause. (Dkt. 376 at 14.)

Defendant Hudson objects, saying she identified sufficient "material misstatements and omission" to justify a hearing. (Dkt. 388 at 26.) By way of further explanation, Defendant Hudson notes the affidavit inaccurately said the search of the truck (and collection of the devices) occurred incident to arrest and omitted the facts that the agent told Hudson to place her blue phone back in the truck at the time of her arrest and that there was a "time delay" and "break in chain of custody" of her truck keys before the agents "re-entered" her truck to seize the items. (Dkt. 388 at 26.)

Affidavits supporting arrest warrants are presumptively valid. *Franks v. Delaware,* 438 U.S. 154, 171 (1978). To get an evidentiary hearing based on alleged misrepresentations or omissions in a search warrant affidavit, "a defendant must make a substantial preliminary showing that the affiant made false statements, either intentionally or

with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false, and that the false statements were necessary to the finding of probable cause." *Id.* "[I]ntentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009) (quoting *Madiwale v. Savaiko,* 117 F.3d 1321, 1327 (11th Cir.1997)). The defendant bears the burden of showing that, "absent those misrepresentations or omissions, probable cause would have been lacking." *Id.* (quoting *United States v. Novaton,* 271 F.3d 968, 987 (11th Cir.2001)). This is a technical process. The evaluating judge must remove all tainted information, transplant into the text the material omissions averred by the defendant, and then step back to see if the new warrant would have established probable cause for the search. *Id.* ("As there is no dispute that the magistrate judge undertook the evaluation prescribed by *Franks* and considered the affidavit with the omissions and additions proposed by Defendant, the Court is not persuaded that the trial court erred in declining to hold a *Franks* hearing."). If it does, no hearing is required. *Id.*

The affidavit in this case passes that test.  Even removing the false statements that the agents (1) searched Defendant Hudson's truck incident to her arrest and (2) seized the blue and white phones from her person and adding the omitted facts that agents (1) told her to place her blue phone in the truck at the time of her arrest, (2) placed her keys in the lounge before transporting Defendant Hudson from the scene and (3) returned to the lounge hours later to search the vehicle, the affidavit would still establish probable cause.  That is because the evidence still included detailed facts about Defendant Hudson's (and her co-defendant's) involvement in the Amazon fraud and the hookah lounge fraud (Dkt. 319-1 at ¶¶ 6-35), their use of paper and electronic documents to do so (*id.* at ¶¶ 12, 20, 31-34), that Defendant Hudson was going to the hookah lounge to complete paperwork for the fraudulent transaction (*id. at* ¶ 3), that the electronic devices were recovered from her vehicle hours after her arrest and after agents required her to put the blue phone in her truck and left the keys in the hookah lounge; that Defendant Hudson (in a post arrest interview) admitted using the laptop in the truck to create fraudulent bank documents given to the victim in the hookah lounge fraud (*id.* at ¶ 42), and that she admitted receiving, sending, and

discussing the fraudulent court documents on the phones (*id.*). All of this is far more than enough to establish probable cause to believe those devices would contain evidence of criminal activity. That the devices were not seized immediately and that the keys to the truck were locked in the hookah lounge during that delay does not negate the strong reason to believe evidence of Defendant Hudson's criminal activity would be found on the phones and laptop she had on the day of the transaction. Any possible doubt was removed by her admission that she used the devices while committing the fraud.[8]

The Court adopts the Magistrate Judge's conclusion that no additional hearing was necessary.

### 5. Financial Records Obtained by Grand Jury

The Magistrate Judge recommends the denial of Defendant Hudson's motion to suppress the seizure of her bank records through grand jury subpoenas the United States issued to those banks because she "failed to prove that she had a personal right or privilege in the documents seized and therefore does not have standing to challenge the

---

[8] A *Franks* hearing—at which a court determines whether averred facts are untrue or whether relevant facts were omitted—is also not required because, in this case, the United States admits those circumstances.

subpoenas." (Dkt. 376 at 15-16.) Defendant Hudson does not really challenge that legal conclusion, nor could she as that is an accurate statement of the law. *Miller*, 425 U.S. at 443 ("the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities.") Defendant Hudson, however, says the Magistrate Judge failed to consider her argument that the United States misused the grand jury process by having an Assistant United States Attorney draft and issue subpoenas "without an active grand jury request" and her argument the United States was required to offer "real evidence that a duly constituted grand jury existed. (Dkt. 388 at 20-21.)

The Court rejects these arguments. There is nothing wrong with an Assistant United States Attorney issuing a grand jury subpoena. And it certainly does not suggest the lawyer acted without an active grand jury investigation. Federal Rule of Criminal Procedure 17(c) governs the issuance of subpoena duces tecum during grand jury proceedings. *See United States v. R. Enterprise*, 498 U.S. 292, 299 (1991) ("the focus of our inquiry is the limit imposed on a grand jury by Federal Rule of Criminal Procedure 17(c), which governs the issuance of subpoenas *duces tecum* in

federal criminal proceedings"). Under that rule, "the clerk of a district court is authorized to issue blank subpoenas (marked with the seal of the court) to a prosecutor working with a grand jury" to compel the production of documents or testimony before the grand jury. *Coronado v. Bank Atlantic Bancorp, Inc.* 222 F.3d 1315, 1321 (11th Cir. 2000).

Defendant Hudson seems to contend the request must *originate* with some member of the grand jury telling the Assistant United States Attorney what do to. She cites no authority for that contention. Prosecutors do not have to obtain a grand jury's pre-approval before issuing a subpoena and, in fact, a grand jury may not even be aware that a prosecutor has issued a subpoena on its behalf until the recipient returns the requested documents to the grand jury or appears before the grand jury for testimony. *United States v. (Under Seal)*, 1987 WL 375526, at *2 (4th Cir. May 12, 1987) ("It is acceptable for the subpoena to be issued by the United States Attorney without actual prior grand jury authorization. A grand jury need not approve or even have knowledge of a subpoena prior to its issuance.); *Doe v. DiGenova*, 779 F.2d 74, 80 (D.C. Cir. 1985) (grand jury subpoenas issued "at the request and in the

discretion of the prosecuting attorney" without grand jury's prior approval).

As part of this argument, Defendant Hudson contends that, once she raised an issue regarding the validity of the grand jury subpoenas, the United States was required to show the subpoenas were authorized. (Dkt. 388 at 23.) The Court disagrees. She raised no such evidence and, the United States had no burden to prove the legitimacy of the grand jury subpoenas.

### 6. Conclusion of Motions to Suppress

The Court adopts the Report and Recommendation (with modifications explained above), overrules Defendant Hudson's objections (as explained above), and **DENIES** Defendant Hudson's Motions to Suppress (Dkts. 21, 27, 126, 180, 313).

### B. Motion to Dismiss for Prosecutorial Vindictiveness and Misconduct

The executive branch has enormous prosecutorial discretion and, if a prosecutor has probable cause to obtain an indictment, a court cannot interfere with its decision to do so. *United States v. Barner,* 441 F.3d 1310, 1315 (11th Cir.2006). Likewise, "[a] prosecutor may seek a superseding indictment at any time prior to trial on the merits." *Id*

(*citing United States v. Cole*, 755 F.2d 748, 757 (11th Cir. 1985).)  A prosecutor violates a defendant's due process rights, however, if he or she obtains new charges to harass a defendant or out of vindictiveness. *Barner*, 441 F.3d at 1315.  "Vindictiveness in this context means the desire to punish a person for exercising his [her her] rights," including the right to plead not guilty and demand a trial.  "To establish actual vindictiveness, a defendant must prove that: (1) the prosecutor wanted to punish the defendant for exercising his rights (animus); and (2) the prosecutor's animus caused the prosecutor to bring charges of increased severity (causation)." *United States v. Brown*, 862 F.Supp.2d 1276, 1290 (N.D. Ala. 2021) (citing *Barner*, 441 F.3d at 1322).

Defendant Hudson moved to dismiss the superseding indictment "due to the Government's continued prosecutorial vindictiveness and misconduct." (Dkt. 146 at 4.)  The Magistrate Judge recommends denial of that motion because no evidence suggests the United States acted vindictively either in obtaining the initial indictment when Defendant Hudson failed to enter a plea to the criminal information and committed additional criminal activity or in seeking the second superseding indictment in anticipation of trial.  (Dkt. 376 at 24.)  Defendant Hudson

objects, arguing the Magistrate Judge failed to consider the prosecuting attorneys' admissions that he indicted her for not pleading guilty and that, in doing so, the United States "massively increased [her] sentencing exposure." (Dkt. 388 at 35.)

The Magistrate Judge did not overlook these facts. She explained that the United States indicted Defendant Hudson in this case "when she chose not to accept the Government's [plea] offer" to the charges set forth in the 2022 information. (Dkt 376 at 24.) And there was nothing wrong with the United States doing that. The United Sates filed the information with limited charges as an accommodation to Defendant Hudson with the expectation she would plead guilty and cooperate. (Dkt. 133 at 13-14.) She not only failed to do that, she also committed the hookah fraud while on pretrial release. "[I]t is not vindictive for a prosecutor to follow through on a threat made during plea negotiations." *See e.g. Jordan v. Epps*, 756 F.3d 395, 407 (5th Cir. 2104). Similarly, "[w]hen the party refuses to cooperate, prosecution, based upon probable cause to believe the defendant committed the crime charged, does not present the likelihood of vindictiveness." *See e.g. United States v. Boss*, 652 F.2d 36, 38 (10th Cir. 1981). That is essentially what happened

here—the United States offered Defendant Hudson a deal to resolve her criminal liability for the Amazon fraud; despite agreeing to be charged by a criminal information, she did not follow through on that agreement; and the United States (knowing she had abused their trust in committing additional criminal activity) decided to prosecute her for the full extent of the Amazon fraud and her new criminal activity.  That the United States apparently did not give Defendant Hudson one final chance to plead guilty to the criminal information before seeking her indictment does not change the assessment or suggest vindictiveness, particularly in the light of her new criminal activity.  That the new charges increased her exposure to additional jail time (or even a lot more jail time) also does not indicate vindictiveness since that exposure is just a product of the number of charges (most of which merge at sentencing).

As demonstrated by the indictment, the United States had probable cause to include both schemes in the initial indictment.  This, too, undermines any suggestion of vindictiveness.  *See United States v. Davis*, 854 F.3d 1276, 1292 (11th Cir. 2017)( "the district court found that the new charges were added based on [defendant's] post-indictment conduct, which rebutted any claim that the addition of the charges was

vindictive"). Likewise, "the Supreme Court has recognized that the addition of charges while preparing for trial generally does not give rise to a presumption of vindictiveness because, '[i]n the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution.'" *Id. (citing United States v. Goodwin*, 457 U.S. 368, 381 (1982).) That is what the United States did when filing the second superseding indictment. (Dkt. 383 at 25-26.)

The Court overrules Defendant Hudson's objections to the Report and Recommendation, concludes Defendant Hudson has failed to raise any suggestion of vindictive prosecution, and **DENIES** her Motion to Dismiss for Prosecutorial Vindictiveness and Misconduct (Dkt. 146).

### C.    Motion to Dismiss Pursuant to 12(b)(1)

Defendant Hudson objects to the Magistrate Judge's recommendation that the Court deny her Motion to Dismiss Pursuant to Rule 12(b)(1). (Dkt. 143.) She claims the Magistrate Judge misunderstood her motion and failed to consider her challenge to the "totality" of the United Stats's alleged misconduct, including seizing her bank account without a valid warrant, misusing grand jury subpoenas in the absence of a "a genuinely independent Grand Jury," arresting her

without a warrant, manufactur[ing] probable cause for the search of her truck, vindictively seeking the indictment in this case after she failed to plead guilty to the 2022 criminal information, using her proffer session as a "trap," and engaging in a "pattern of using procedural rules (timing labeling, sealed procedure) to block meaningful review of each violation." (Dkt. 388 at 29-30).

The Court has already rejected the first five arguments.  And Defendant Hudson has presented no evidence her proffered session (that she attended with a lawyer) was a "trap" or that the United States has somehow been using procedural rules to prejudice her or preclude proper review.  The Court thus overrules Defendant Hudson's objections, adopts the Magistrate Judge's recommendation, and **DENIES** Defendant Hudson's Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 143).

## IV. Conclusion

The Court has conducted a careful and complete review of the Report and Recommendation (Dkt. 376) and Defendant Hudson's objections (Dkt. 388).  For the reasons set forth above, the Court **DENIES** Defendant Hudson's Motions to Suppress Evidence (Dkts. 21, 27, 126, 180, 313), Motion to Dismiss pursuant to Fed. R. Crim. P. 12(b)(1) (Dkt.

143), and Motion to Dismiss for Prosecutorial Vindictiveness and Misconduct, (Dkt.146). The Magistrate judge refused to consider an "Amended Post Evidentiary Hearing Motion to Dismiss" (Dkt. 325) that Defendant Hudson filed after the deadline. The Court does as well, thus **DENYING** any relief sought in that pleading. A couple of days before the Magistrate Judge issued her Report and Recommendation (and long after briefing on the issue had concluded) Defendant Hudson also filed another motion to suppress, repeating the same arguments. (Dkt. 372.) The Court **DENIES** that motion as meritless and untimely. The Court **GRANTS** Defendant's Motion for Leave to File Objections to Final Report and Recommendation Out of Time and in Excess of Page Limit (Dkt. 389).

     **SO ORDERED** this 19th day of December, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE