FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
FEB 2 6 2026
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Federal Case No. |
| Plaintiff | ) | |
| v. | ) | |
| BRITTANY HUDSON | ) | **1:23-CR-00131(MLB)** |
| Defendant | : | |

## AFFIDAVIT OF BRITTANY HUDSON

**State of Georgia** )
) ss
**County of Henry** )

I, Brittany Hudson, being duly sworn, declare under penalty of perjury pursuant to 28 U.S.C § 1746 as follows:

### I. PERSONAL KNOWLEDGE

1. I am the Defendant in the above-captioned matters (1:23-cr-131(MLB)), pending in the Northern District of Georgia and make this affidavit based on my personal knowledge
2. I submit this affidavit in support of my Kastigar claim and writ of mandamus, to establish that the Government made direct and derivative use of compelled information obtained through proffer sessions following unlawful seizures, prior to any valid criminal case being filed against me.

## II. LACK OF JURISDICTION

3. There was no established jurisdiction prior to the filing of the Criminal Information, which has led to the subsequent indictments.

4. There was no established probable cause for the seizures that were conducted preceding the filing of the Criminal Information.

5. The Criminal Information was filed without a complaint, without supporting Oath or Affirmation, without leave of the Court and without the Government proving on the record in writing the jurisdiction.

6. On April 19, 2023, I challenged the jurisdiction of the Court in the first case, Criminal Information 1:22-CR-362 at Doc. 30.

7. The same day April 19, 2023, the Government filed a second case in 1:23-CR-131 alleging the same conduct in the Criminal Information and other conduct.

8. The Government never responded to Doc. 30.

9. On August 21, 2025, AUSA McClain admitted on the record that Doc. 30 challenged the jurisdiction of the Court. The Magistrate Judge denied Doc. 30 stating that the Court does not recognize the type of document filed.

10. The Court never required the Government to prove on the record in writing the jurisdiction of the Court.

11. On September 22, 2025, I filed Doc. 321, which again challenged the jurisdiction of the Court.

12. On September 29, 2025, Magistrate Judge Cannon issued a Non-Final Report and Recommendation stating she would not consider Doc. 321, which challenged jurisdiction of the Court, and that it was filed untimely.

13. On October 7, 2025, the Government filed a Second Superseded Indictment against me.

14. At arraignment on October 16, 2025, AUSA McClain stated on the record that the second superseded indictment did not bring any substantive changes and was cosmetic.

15. At arraignment on October 16, 2025, I challenged the jurisdiction of the Court. I informed the Court that I would not be able to present a full defense without the jurisdiction of the Court.

16. Magistrate Judge Anand construed my argument as wanting the indictment to be read and stated that I would have to raise that issue before the District Court.

17. On October 21, 2025, I informed District Judge Brown that the Jurisdiction had been challenged and the Government failed in meeting its burden to prove on the record in writing the jurisdiction of the Court.

18. On October 23, 2025, I informed the Court that the proceedings could not proceed without jurisdiction of the Court established on the record in writing. Judge Brown instructed me that I could raise that issue on appeal.

19. Jurisdiction is a threshold matter and must be first determined. As of today, there is nothing on the writing to prove that this Court has jurisdiction to proceed.

20. Jurisdiction is a prerequisite matter. Proceeding without jurisdiction is void ab initio. Any trial or judgment entered without jurisdiction is a nullity.

21. The jurisdiction of the Court has still not been placed on the record in writing. Trial is set for an unknown date in March 2026.

## III. LACK OF NOTICE OF TRIAL DATE

22. On January 27, 2026, there was a hearing before Judge Brown in the District Court.

23. I requested an extension of time for trial to commence because I had surgery on January 13, 2026, and was still on narcotic medication.

24. Two possible dates were discussed (March 9 and March 16, 2026).

25. The Judge stated he would allow the Government to select the trial and would inform me of the date selected.

26. On February 16, 2026, standby counsel Mr. Brandon A. Thomas visited and I asked him when trial was scheduled for.

27. Mr. Thomas responded with it is scheduled for “March”.

28. When I asked for the date Mr. Thomas responded with, “I will have to check my calendar, I do not know off the top of my head.”

29. As of mailing this affidavit, I have not been provided with a formal written notice of a firm trial date.

## IV. UNLAWFUL SEIZURES PRECEDING ANY CASE

30. On or about August 1, 2022, the federal agents caused my bank accounts to be seized.

31. At the time of the seizures of my bank accounts there was no filed criminal case, I was not provided notice, there was no judicial findings disclosed to me, there was no known established probable cause, and there was no service of any seizure warrants upon me.

32. At the time of these seizures:

- No criminal information or indictment had been filed;
- No complaint was filed;
- I had not been charged with any offense;
- I had no meaningful opportunity to contest the seizures; and
- I was not provided with a proof of the return of the warrants.

33. These seizures directly initiated the Government contact and coercive leverage against me causing financial strain and fear.

34. I was coerced and compelled to come forward by these seizures.

## V. FIRST PROFFER SESSION AND DERIVATIVE EVIDENCE

35. On August 16, 2022, I participated in a proffer session with the Government.

36. During this proffer session:

- The Government seized cashier's checks;
- Discussions included alleged wire fraud, money laundering, witnesses the Government has on its Witness List and before any criminal case was filed.
- Discussions included information pertaining to witnesses the Government intends to use for trial;

37. At the time of the proffer:

- There was no criminal case pending against me;
- There was no complaint filed;
- I was not provided with the seizure warrants;
- No attorney appearance had been made;
- The Government had not established independent probable cause for the charged offenses.

38. Seizures of bank accounts were executed between August 1, 2022, and August 4, 2022.

## VI. GOVERNMENT ADMISSIONS

39. On September 28, 2022, Secret Service Agent seized vehicles and other items from the property in Smyrna, Ga, without established probable cause, without any warrants and prior to any case having been filed.
40. On September 29, 2022, I was charged by criminal information with one count of conspiracy to commit wire fraud. I was arraigned that same day.
41. On that same date, during my arraignment, the Government stated on the record that it learned of cashier's checks that it was unaware of. The production of this information occurred during the proffer session.
42. The Assistant United States Attorney Stephen McClain stated on the record:

    "She contacted us after we seized some accounts and is now cooperating."
43. The Assistant United States Attorney stated:

    "They turned over $300,000 in **cashier's checks that we did not know about**."
44. The Assistant United States Attorney also stated:

    "we seized several luxury vehicles that they signed over to us"
45. The statement confirms that:
    - The Government lacked prior knowledge of the cashier's checks;
    - The information was obtained through post-seizure cooperation;
    - The cooperation was causally connected to the unlawful seizures.
46. On April 18, 2023, Secret Service Agent Matthew Oltman testified before the Grand Jury.
47. Within that testimony Agent Oltman under oath stated,

    "After Secret Service started its investigation did we through the Grand Jury process obtain the different bank accounts where the money was being sent to."
48. Within that testimony at no point were seizure warrants mentioned.

## VII. ARREST AND SECOND PROFFER SESSION

49. On January 27, 2023, I was arrested for alleged bond violations, including an accusation that I forged Judge Batten's signature.
50. At the time of arrest, I was not provided nor shown an arrest warrant
51. At the time of arrest, there was no arrest warrant issued on the record of the case.

52. On February 21, 2023, I attended a second proffer session.

53. This proffer session focused on the alleged forgery allegations and related conduct alleged.

54. On February 22, 2023, the arrest warrant was placed on the record as "returned."

## VIII. RETALIATORY CHARGING AND ESCALATION

55. On April 19, 2023, I filed Document 30 in the Criminal Information case 1:22-CR-362 challenging the jurisdiction of the Court.

56. The Government immediately retaliated and filed a second case by indictment 1:23-CR-131, alleging conspiracy to commit wire fraud, wire fraud, money laundering and forgery.

57. This indictment timeline immediately followed my filing of Document 30, which challenged jurisdiction in the criminal information case.

58. On June 20, 2023, I filed motions within both the criminal information and the indicted case.

    a. Motions that were filed:

        - Motion to Dismiss on Speedy Trial
        - Motion to Suppress Search and Seizure
        - Motion to Sever
        - Motion for Disclosure of Confidential Informants
        - Motion to Dismiss Counts 1, 2-14
        - Motion to Strike Surplusage
        - Motion to Suppress Evidence

59. Again, immediately following the filing of my motions on June 20, 2023, the Government filed a first superseded that made no changes as to me.

60. The superseded indictment added Mr. Jamar James Sr. who was deceased at the time the indictment was filed and Mr. Darrell Burgo.

61. Within the first superseded indictment, there was no linkage of counts pertaining to me.

62. The superseded indictment followed my filing of Motion to Dismiss for Violation of Speedy Trial Act, Motion to Sever, Motion to Suppress and other motions.

63. On June 27, 2023, the Government admitted on the record that I was indicted because I asserted a right that the Constitution afforded me.

64. The Assistant United States Attorney stated: (see Case: 1:23-CR-131 Doc. 133)

"We indicted her because she did not accept our plea agreement."

## IX. POST HOC SEIZURE WARRANTS

65. For two years I requested the seizure warrants for the seizures conducted in August 2022.
66. The Government repeatedly argued that it had provided all Rule 16 discovery which it was required to produce.
67. On October 31, 2024, Assistant United States Attorney stated on the record that they were not intentionally withholding any discovery or brady material.
68. During the hearing held on October 31, 2024, the Government was ordered to file a response to the Motion to Dismiss for Violation of Discovery Order due on December 2, 2024.
69. On November 26, 2024, the Government sought an extension of time to file its response to the Motion to Dismiss for Violation of Discovery Order. That extension was granted and the response was required to be filed by December 12, 2024.
70. On December 18, 2024, two years after the August 2022 seizures, I received seizure warrants purported to be from those August 2022 seizures.
71. Upon receiving those seizure warrants, I checked the properties of those warrants and the properties state the seizure warrant was created on December 11, 2024 and modified on December 12, 2024. (See attached)
72. Every warrant provided has electronic stamps and signatures but there was no proof that they were filed in any case, no ECF stamp.
73. On January 2, 2025, I filed a Motion for Immediate Production of Discovery requesting additional information and docket proof. (Case 1:23-CR-131 Doc. 220)
74. I have never been provided contemporaneous proof such as docket proof or metadata establishing that any seizure warrant was created, signed or authorized prior to the seizures conducted in August 2022.
75. I was never served with the warrants or return of the warrants after the execution of those warrants.
76. I had been in the Government's office on different occasions immediately following the August seizure and supposed January seizures and neither time were I provided with the seizure warrants.

77. The Government never responded to the Motion for Immediate Production of Discovery Doc. 220.
78. On July 23, 2025, I filed a Motion for an Order Requiring the Government to Immediately Produce the Requested Discovery filed in case 1:23-CR-131 as Doc. 294 seeking additional material to support the purported seizure warrants.
79. The Government never responded to that motion.
80. On December 15, 2025, I received seizure warrants from the Government which it alleged are ECF filed copies of the warrants, more than 3 years after the execution of the seizures.
81. During that hearing it was argued that Kevin P. Weimer provided the filed copies of the warrants opposed to unsealing the record.
82. I immediately objected to that argument asserting that Mr. Weimer is a government witness expected to testify at trial.
83. This proves that the Clerk of Court's office handled evidence within this case which the Government intends to present at trial.

## X. CROSS EXAMINATION OF GOVERNMENT WITNESSES

84. On January 13, 2026, I underwent a medical surgery that required anesthesia.
85. The week following surgery I was housed in medical. The Court was informed of the surgery on December 17, 2025.
86. AUSA McClain called the Detention Facility Doctor on December 17, 2025, and obtained information pertaining to the surgery.
87. While housed in medical following the surgery, Marshal Yearwood was at the facility and I asked if he would inform the Court and the Standby counsel that I was housed in medical and had no law library time and would need an extension of time. He informed me that he would.
88. On January 20, 2026, I filed a Motion to Continue Trial.
89. Also on January 20, 2026, I was taken to the Courthouse without pain medication, this caused extensive inflammation and prolonged healing.
90. On January 22, 2026, I filed an Emergency Motion to Continue Trial and Extension of Time to Recover Medically and Prepare Defense.
91. On January 27, 2026, I was taken to the Courthouse again, while still medicated.

92. The Judge's Clerk entered the Courthouse and informed AUSA McClain that no matter what Judge Brown informed her that there would be a hearing on the seizure warrants that day (January 27, 2026) at 2:00pm.

93. At the hearing on January 27, 2026, I informed Judge Brown that I was still on narcotic medication and he stated that he was informed I was only taking regular Tylenol and that I had access to the law library.

94. Judge Brown stated he was informed that I would be able to participate in trial that day as long I was provided with periodic breaks.

95. Within the morning hearing Judge Brown ordered that there would be a hearing on the seizure warrants at 2:00pm. Which I informed him I was not adequately prepared to argue.

96. During the hearing at 2:00pm on January 27, 2026, I was forced to cross examine the Government's witnesses pertaining to the seizure warrants while still under the influence of narcotic medication.

97. Judge Brown asked me if I was unable to remain focused based on the medication and I stated yes. Despite stating yes, I was still forced to cross examine witnesses that day.

98. Trial was reset for an undetermined date in March of 2026.

## XI. SECOND SUPERSEDED INDICTMENT AND CASHIER'S CHECK COUNTS

99. On October 7, 2025, the Government filed a Second Superseded Indictment.

100. On October 16, 2025, during arraignment, the Government admitted before Magistrate Judge Anand that this indictment was "cosmetic" and "there are no substantive changes" it was filed to remove the co-defendants who were done.

101. On October 21, 2025, during a hearing before Judge Brown the Government admitted again that the second superseded indictment did not create any substantive changes;

102. The second superseded indictment including counts 25 and 26, which explicitly reference the cashier's checks.

103. These cashier's checks were:

- Obtained during the August 16, 2022, proffer; and
- Admittedly unknown to the Government prior to my compelled cooperation.

104. The inclusion of the counts demonstrates direct and derivative use of proffer-obtained information.

## XII. GOVERNMENT'S USE OF PROFFERED MATERIAL

105. The Government failed to provide evidence it intended to use at trial at arraignment as required by the local rule for the Northern District of Georgia rule 16.1.

106. On January 12, 2026, the Government provided me with a list of witnesses it intended to use at trial

    a. Michael Mitchell, Samuel Hudson-Bey and Angie Hudson were also information provided within the Proffer agreement on August 16, 2022.

107. On January 20, 2026, the Government provided a copy of the cashier's checks provided and discussed during the proffer session held on August 16, 2022.

108. The Government will not be able to prove that it is not directly using information provided as it has already admitted on the record that it was unaware of the cashier's checks prior to being turned over.

109. Attached is a true and accurate copy of the proffer notes the Government provided within the discovery from the August 16, 2022 proffer meeting.

## XIII. KASTIGAR LITIGATION HISTORY

110. I raised Kastigar arguments in June 2024, which were denied by Judge Batten without a hearing.

111. Every oral motion or argument raised pertaining to the Kastigar violation was not heard by the Court despite the Government's admittance that there had been an oral motion filed raising this argument.

112. On December 17, 2025, before Judge Brown, I again stated on the record that I was raising Kastigar violations.

113. Judge Brown asked the Government whether I had an attorney present at the proffer session and stated that the time for filing pretrial motions had passed.

## XIV. NO WAIVER OF KASTIGAR PROTECTIONS

114. The presence of counsel during a proffer session does not waive Kastigar protections.

115. At the time of the first proffer session:

- No criminal case existed;
- The Government had already unlawfully seized my property;
- I was caused great financial harm and fear
- Any cooperation was the direct result of government leverage.

116. Kastigar protections apply regardless of counsel's presence and cannot be waived by timing rules when the taint is ongoing and only later revealed through derivative charging.

117. On January 20, 2026 I received the Government's Exhibit labeled as 407A which the Government intends to admit as evidence at trial.

118. Based on the Government's own prior admissions, that it was unaware of the cashier's checks and learned of it through the proffer, I attempted to raise the Kastigar argument before trial.

119. The District Court declined to conduct a pretrial Kastigar hearing and stated any Kastigar issues could be addressed at the start of trial.

120. The continued use of proffer-derived information constitutes and ongoing constitutional violation.

121. This has caused continued irreparable harm as I have been detained pretrial more than 1,100 days.

## XV. GOVERNMENT'S WITNESS' INTERVENTION

122. On April 27, 2023, during the arraignment of the Indicted case filed in 1:23-CR-131, my then counsel raised the concern of the case being assigned to Judge Batten.

123. The indicted case 1:23-CR-131 alleged that Judge Batten's signature was forged and I was charged in count 25 of Forgery of Signature of Federal Judge and Seal of Court.

124. During the Arraignment on April 27, 2023, Magistrate Judge Vineyard stated that he communicated with Judge Batten on if case 1:23-CR-131 would be assigned to Judge Batten.

125. The transcripts of that hearing filed in the case as Doc. 132 in case 1:23-Cr-131 proves that Judge Batten instructed Magistrate Judge Vineyard to assign the case to him.

126. Judge Batten's instruction of the case assignment was intervention of random case assignment.

## XVI. EXHIBITS AND APPENDIX DOCUMENTS

127. I assert that the following exhibits and Appendix documents are true and accurate copies of the documents filed within the case.

128. I have requested filed copies of each documents but were not provided with them.

129. The excerpts of transcripts are true and accurate copies. If the full documents are required they can be produced.

## XVII. CONCLUSION

130. The District Court is not allowed to overlook Constitutional violations.

131. The Government has failed to demonstrate an independent source for the evidence used against me.

132. The indictments, superseded indictments and added counts are tainted by direct and derivative use of compelled information.

133. Absent mandamus relief, these violations will evade review and irreparably harm my constitutional rights.

134. **Trial is imminent.**

## DECLARATION

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on this 24th day of FEBRUARY, 2026.**

Respectfully submitted, without prejudice

[signature]

Brittany Hudson, without recourse
USMS 24309-510
c/o P.O. Box 730
Lovejoy, GA 30250

# NOTARY

In the County of Henry, State of Georgia, on this 24th day of FEBRUARY, 2026, before me the subscriber, personally appeared to me known to be the living woman described in and who executed the foregoing instrument and sworn before me that that she executed the same as her free will act and deed.

SUBSCRIBED AND SWORN TO before me this 24th day of **FEBRUARY, 2026**.

Linda Jones
Notary Public Signature

Seal

LINDA M. JONES
NOTARY
EXPIRES
GEORGIA
July 13, 2029
PUBLIC
HENRY COUNTY

**My Commission Expires** 7/13/2029

Brittany Hudson
24309510
P.O. Box 730
Lovejoy, GA 30250

quadient
FIRST-CLASS MAIL
IMI
$001.32 º
02/24/2026 ZIP 30250
043M31242216
US POSTAGE

Robert A. Deyton
Correctional Facility

Clerk of Court
2211 United States Courthouse
75 Ted Turner Dr SW
Atlanta, GA 30303